IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| American Environmental Services, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 8-1479 |
| | ) | |
| Metalworking Lubricants Company, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Chief District Judge

# OPINION
## and
## ORDER OF COURT

Defendant Metalworking Lubricants Company ("Metalworking") is a manufacturer and supplier of lubricants, cleaners, quenching fluids and rust inhibitors. See Complaint, ¶ 7. Metalworking was engaged in a project at the DuPont Chambers Works ("DuPont Site") in Deepwater, New Jersey in late 2007 and early 2008. It sought to subcontract a portion of its work at the DuPont Site - specifically, the on-site cleaning of certain large storage tanks. It contracted with Plaintiff American Environmental Services, Inc. ("AES") to provide those services. Though AES began work on the project, it eventually ceased operations at the DuPont Site based upon its belief that Metalworking had breached the applicable contract.

Accordingly, AES commenced this litigation under 28 U.S.C. § 1332(a)(1) seeking relief for breach of contract and *quantum meruit* / unjust enrichment.

1

Metalworking responded by filing a Motion to Dismiss Pursuant to Rules 12(b)(2) and (3). See Docket No. [10]. Metalworking challenges both the existence of personal jurisdiction and the propriety of venue. In the alternative, Metalworking seeks a transfer of venue pursuant to 28 U.S.C. § 1404(a). See Docket No. [14]. AES opposes both Motions.

After careful consideration, and for the reasons set forth below, the Motion to Dismiss is denied as is the Motion to Transfer.

I. Motion to Dismiss

    A. Personal Jurisdiction

Metalworking is a Michigan corporation with a principal place of business in Pontiac Michigan. See Complaint, ¶ 2. As stated above, the contract at issue was to be performed in New Jersey. See Complaint, ¶ 9. Metalworking urges that, in light of these facts, this Court should dismiss the action based upon lack of personal jurisdiction and / or improper venue.

The issue of personal jurisdiction is easily resolved. AES proffered uncontradicted evidence indicating that Metalworking has been registered with the Corporations Bureau in Pennsylvania for the past thirty years and is currently active. See Docket No. [13-2]. Further, Metalworking designated CT Corporation System, located in Philadelphia, as its registered agent. Id. In Bane v. Netlink, Inc., 925 F.2d 637 (3d Cir. 1991), the Third Circuit court concluded that a foreign corporation consents to being sued in a particular state by registering to do business in that state. The Bane court explained that, "[b]y registering to do

business in Pennsylvania, [the defendant] 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"Bane, 925 F.2d at 640.[1] Accordingly, personal jurisdiction exists over Metalworking.

B. Venue

Because jurisdiction is based solely upon diversity, 28 U.S.C. § 1391 governs venue. Section 1391 provides that:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) <u>a judicial district where any defendant resides, if all defendants reside in the same State</u>, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (emphasis added). Though AES invokes §(a)(1) and §(a)(2) as the bases for the exercise of venue, I need only consider §(a)(1).[2]

Here, Metalworking is the only defendant, so if it is deemed to reside in this district, §1391(a) is satisfied because all defendants would reside here. Section 1391(c) controls where a defendant resides:

---

[1] I recognize that other courts have reached a contrary conclusion. See Wenche Seimer v. Learjet Acquisition Corp., 966 F.2d 179, 182 (5th Cir. 1992) and Ratliff v. Cooper Labs, Inc., 444 F.2d 745, 748 (4th Cir. 1971). Nonetheless, I am bound by the Third Circuit court's holding in Bane.

[2] I agree with Metalworking that AES only referenced Section (a)(2) in the Complaint, but I do not believe that to be fatal to the issue.

> [f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, <u>such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.</u>

28 U.S.C. § 1391(c) (emphasis added).

Pennsylvania has more than one judicial district. Accordingly, the parties focus their arguments on whether Metalworking's contacts with the Western District of Pennsylvania are sufficient to subject it to personal jurisdiction. That Metalworking is registered to do business here and has appointed an agent is insufficient to confer personal jurisdiction. See <u>Tranor v. Brown</u>, 913 F. Supp. 388, 390 (E.D. Pa. 1996) (stating that "venue does not lie against a corporation in a multidistrict state solely because of its corporate status") and <u>Superior Precast, Inc. v. Safeco Ins. Co. Of America</u>, 71 F. Supp.2d 438, (E.D. Pa. 1999) (citing to <u>Tranor</u> for the proposition that "venue within one judicial district does not necessarily flow from a corporation being licensed to do business in that state"). AES's argument to the contrary is not persuasive.

AES also urges that Metalworking is deemed to reside in this district because it "has a business address and telephone number in this District." See Docket No. [13], p. 12. According to AES, it routinely contacted representatives of Metalworking in writing, by telephone and by facsimile at its office in Ligonier.

4

See Docket No. [13], p. 3-4 and Kowalsky Affidavit. Metalworking counters that it does not maintain an office in Ligonier. See Docket No. [18] and Smith, Onnie and Johnson Affidavits attached thereto. Rather, it insists, the Ligonier address is simply the home address of its employee Richard Smith and that Smith commutes to the Metalworking office in Indiana. See Smith, Onnie and Johnson Affidavits. Smith explains that the business card AES had with his Ligonier address on it was old, that the address was no longer current and that the information was provided only to permit customers to contact him at home after-hours if there were an emergency. Id., Smith Affidavit, ¶¶ 7-8. According to Smith, any proposals / offers sent to him in Ligonier were immediately forwarded to the Michigan office. Id., ¶ 10-11. Kim Onnie, another Metalworking employee, represents that she was the primary point of contact in negotiating with AES and that she conducted all negotiations from the Michigan office. See Onnie Affidavit, ¶12.

I am hard pressed to accept AES's argument that these contacts constitute "systematic and continuous business activities in Pennsylvania" which would give rise to the existence of *general jurisdiction*. See Docket No. [13],p. 9. AES does not make any argument regarding the existence of "specific personal jurisdiction" based upon these facts. Yet even were I to find that general jurisdiction does not arise within this District, such a conclusion is not fatal to the issue of venue. Section 1391(c) provides that, " if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant

5

contacts." There can be no doubt that Metalworking has the "most significant contacts" with the Western District of Pennsylvania. Metalworking negotiated with a party located in this District. Even if generated from Michigan or Indiana, Metalworking conducted telephone calls with AES in this District; it issued facsimiles to AES in this District and it sent emails and documents to AES in this District. The parties have not submitted any evidence suggesting that Metalworking had any contacts with either the Eastern of Middle Districts. Accordingly, venue is appropriate in this District based upon the last clause in § 1391(c).

II. Motion to Transfer

Metalworking urges that, even if venue is proper in this District, the convenience of the parties and witnesses and the interests of justice would best be served if this action were transferred to New Jersey. Section 1404(a) of Title 28 of the United States Code governs such a transfer:

> [f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Thus, § 1404(a) contemplates a two step inquiry: (1) determining first whether venue would be proper in the proposed forum; and (2) whether the convenience of the parties and witnesses and the interests of justice would be served by a transfer to the proposed forum.

A. Could The Action Have Been Brought In New Jersey

To secure a transfer under § 1404(a), Metalworking must first demonstrate

6

that this action could have been brought in the District of New Jersey. That is, it must demonstrate that venue, personal jurisdiction and subject matter jurisdiction would have been proper in that district. That Metalworking can satisfy this inquiry does not appear to be a contested matter - neither party addresses the issue.

Questions involving subject matter jurisdiction and venue are easily satisfied. Here, AES invoked the Court's subject matter jurisdiction pursuant to 28 U.S.C. 1332(b)- the parties have diverse citizenship and the amount in controversy is alleged to exceed $75,000.00. The same would apply in the District of New Jersey. As to venue, 29 U.S.C. § 1391(a)(2) permits an action founded upon diversity of citizenship to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Based upon a reading of the parties' submissions, and for the reasons set forth below, I am convinced that a substantial part of the acts giving rise to the claims occurred in the District of New Jersey.

The matter of personal jurisdiction merits a more lengthy discussion. Because subject matter jurisdiction here is grounded upon diversity of citizenship, I must look to the long-arm statute of New Jersey to determine whether the New Jersey court could have exercised personal jurisdiction over Metalworking.³ A New Jersey Court may exercise *in personam* jurisdiction over a

---

³ One cannot dispense of this inquiry based simply upon a defendant's willingness to consent to the transferee court's exercise of jurisdiction. See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960) (stating that a transferee court must

7

non-resident defendant in a manner "consistent with due process of law." R.4:4-(b)(1). New Jersey's long-arm jurisdiction extends to the outermost limits permitted by the United States Constitution. <u>Avdel Corp. V. Mecure</u>, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971), <u>citing</u>, R. 4:4-4(e). As the New Jersey Supreme Court reiterated:

> [T]he test for "due process requires only that in order to subject a defendant to a judgment in personam, if he [or she] be not present within the territory of the forum, he [or she] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

<u>Blakey v. Continental Airlines, Inc.</u>, 164 N.J. 38, 66, 751 A.2d 538, 554 (2000), <u>quoting</u> <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945).

I am satisfied that the exercise of *in personam* jurisdiction by a District Court sitting in New Jersey would not offend "traditional notions of fair play and substantial justice." Metalworking contracted to work on a project on site in New Jersey. Its performance with respect to this project occurred in New Jersey. It retained AES to provide subcontractor services on this project in New Jersey. In light of these uncontradicted facts, one can fairly say that Metalworking reasonably should have expected to have been haled into court in New Jersey.

Consequently, because venue, subject matter jurisdiction and personal jurisdiction would be appropriate in New Jersey, I find that the action *could* have

---

have personal jurisdiction and proper venue over the action, notwithstanding the defendant's willingness to waive them, before a transfer under section 1404(a) is proper).

been brought in New Jersey. I turn then to the question of whether litigating the matter would be more *convenient* if done in New Jersey.

B. Convenience of the Parties and Witnesses and the Interests of Justice

Though there is "no definitive formula or list of factors to consider," the Third Circuit Court has identified an extensive list of both private and public factors to consider in assessing whether the convenience of the parties and witnesses and the interests of justice would be furthered by a transfer:

> (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) "convenience of the parties as indicated by their relative physical and financial conditions"; (5) "the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; (6) the location of books and records; (7) the enforceability of the judgment; (8) practical considerations that could expedite or simplify trial; (9) the level of court congestion in the two fora; (10) "the local interest in deciding local controversies at home" (11) the public policies of the fora; and (12) in a diversity case, the familiarity of the two courts with state law.

In re Amendt, 169 Fed. Appx. 93, 96 (3d Cir. 2006), citing, Jumara v. State Farms Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995). "The burden of showing a need for transfer is on the movant." Id.

I turn first to a consideration of the private factors. Typically, a plaintiff's choice of venue is entitled to deference and should not be lightly disturbed. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971). AES is headquartered and has its principal offices in this District. Thus AES has a connection with this District and a legitimate reason for commencing suit here. Consequently this factor weighs strongly in favor of denying a transfer.

9

The second factor obviously favors Metalworking's request for a transfer. Metalworking prefers this action be litigated in the District of New Jersey. I note, however, that Metalworking does not claim to be headquartered or have a place of business in New Jersey. Rather, Metalworking's sole claim in this regard is that litigating the action where the contract was performed would be the most convenient for all concerned.

The third factor, where the claim arose, is a bit more complicated. AES urges that the dispute focuses upon what the parties intended when they formed the contract. Because the contract was formed in Pennsylvania (and Indiana / Michigan), rather than New Jersey, AES reasons that this factor weighs against a transfer. Metalworking counters that the claim arose in New Jersey because the contract was performed, or breached, in New Jersey.

I agree with AES that part of the dispute lies in whether the parties understood that AES's employees and its subcontractors would be compensated for time spent during lunch breaks, for time spent while waiting to enter the DuPont facility, and for time spent during required training and drug screening. See Complaint, ¶¶18-21. Part of the dispute also lies in whether the parties understood that costs associated with local subcontractors (including travel time to and from the DuPont site) would be billed as "per diem" costs normally associated with AES employees. See Complaint, ¶¶ 15-17. Because these disputes arise from the parties' negotiations in this District (and in Indiana / Michigan), rather than in New Jersey, this factor weighs against transfer.

Metalworking offers two arguments in response. First, it suggests that AES breached the contract by failing to provide a certification that the work it performed was such that the tanks would pass an API-653 Integrity Inspection. See Docket No. [15], p. 2. According to Metalworking, this breach occurred in New Jersey, which weighs in favor of transfer. Yet it appears that whether AES warranted that the tanks would pass an Integrity Inspection is a matter in dispute. A portion of the Agreement provides that the "intent of the cleaning is to remove the existing contents in preparation for an AP-653 Integrity Inspection" and that the "cleaning will provide a condition whereby an AP-653 Inspector will be able to visually inspect and use NDT methods for examination of the tank." See Proposal Dated December 12, 2007, attached to AES's Memorandum in Opposition to Motion to Dismiss, Ex. G. Whether the parties intended that by including this language AES warranted that the tanks actually would pass an Integrity Inspection again turns on the issue of what the parties understood during the negotiations - which occurred in this District, not in New Jersey.

Second, Metalworking urges that the "unit costs" it agreed to pay AES are not in dispute, but that the actual "units" AES charged Metalworking are. See Docket No. [15], p. 3. Metalworking views this as a dispute arising out of New Jersey rather than this District. According to Metalworking, DuPont actually paid AES's invoices and DuPont rejected many of AES's invoices based upon the fact that the amounts billed on the invoices conflicted with DuPont's own information contained in their security books and because AES failed to provide

11

documentation for items such as lodging.

Again, I find Metalworking's argument unpersuasive. Whatever DuPont's requirements were as to documentation, Metalworking has not provided me any information suggesting that those requirements were somehow incorporated into the AES / Metalworking Agreement. Further, AES does not dispute that documentation would be lacking for certain of the hours for which it claims compensation - the employees and subcontractors would not have been logged in at DuPont's site (i.e., while they stood in line waiting to be admitted, during their lunch hour, and during training and drug screening) or that documentation would be lacking for lodging (the subcontractors did not incur hotel expenses). As such, the issue seems not to be one involving New Jersey as much as it does what the parties intended when they negotiated. Those negotiations occurred in Pennsylvania (and Indiana / Michigan).

On the whole then, it appears to me that the dispute in this case arises from what the parties intended when they entered into the contract. The negotiations occurred in Pennsylvania and Indiana / Michigan. Consequently, I find that this factor weighs against transfer.

Turning to the fourth factor, I must consider the convenience to the parties as indicated by their relative physical and financial conditions. I find that this factor weighs against a transfer. Neither party is from New Jersey. Both would incur expenses if forced to litigate there. In contrast, AES is located within this District. Proceeding with the litigation in this District would minimize the

expense for at least one of the parties. Further, Metalworking would bear the expense of litigating outside its home forum regardless of where the case was litigated.

I must also consider the issue of witnesses. As stated above, I consider this dispute to be one of the parties' intentions at the time of contract negotiations and formation.[4] Accordingly, the relevant witnesses are party witnesses and "each party is obligated to procure the attendance of its own employees for trial." Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 199 (E.D. Pa. 2008), citing, Affymetrix, Inc. V. Synteni, Inc., 28 F. Supp.2d 192, 203 (D. Del. 1998). As the movant, Metalworking has the burden to provide evidence that non-party witnesses actually would be unavailable for trial in this District. See Kettavong v. Gasbarre Products, Inc., Civ. No. 7-810, 2007 WL 2728413 at * 3 (W.D. Pa. Sept. 17, 2007) (finding that the convenience of the witnesses did not favor a transfer because the defendant failed to support its argument with any evidence), citing, Plum Tree, Inc. V. Stockment, 488 F.2d 754, 756-757 (C.A. 1973) and Jumara, 55 F.3d at 879. Metalworking has not discharged this duty. Consequently, I reject Metalworking's contention that the convenience of the witnesses favors a transfer. This factor is neutral.

---

[4] Metalworking urges that it needs the testimony of DuPont employees and hotel employees to refute AES's claims that its employees and subcontractors incurred certain expenses. For the reasons set forth above, however, I reject Metalworking's contentions that this is the heart of the dispute between the parties. Accordingly, I do not believe the DuPont and hotel employees are vital witnesses.

13

Finally, with respect to the "private factors," I must consider the location of the books and records. Metalworking suggests that the relevant books and records consist of DuPont's logbooks and the hotel records. For the reasons set forth above, I reject this contention. The dispute here focuses upon the parties' negotiations during the formation of the contract. The relevant documents would consist of the "books and records" exchanged during this process. Nobody suggests that these items are located in New Jersey. Rather, they are located in Pennsylvania and Michigan (and perhaps Indiana). Further, "the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." See Lomanno v. Black, 285 F. Supp.2d 637, 647 (E.D. Pa. 2003), quoting, Am. High-Income Trust v. Allied Signal Inc., Civ. No. 00-690, GMS, 2002 WL 373473 at * 5 (D. Del. March 7, 2002) (citations omitted). "This factor should thus be limited to the extent that the files could not be produced in the alternative forum." Coppola, 250 F.R.D. at 200, citing, Jumara v. State Farm Insurance Company, 55 F.3d 873, 879 (3d Cir. 1995). Metalworking has not provided any evidence indicating that whatever evidence it has which is relevant to resolution of the dispute cannot be reproduced in this forum. Because AES's documents relevant to the contract negotiations are located in this District and because none are located in New Jersey, this factor weighs against a transfer.

Turning to a consideration of the public factors, I look to the enforceability of the judgment, court congestion in the two fora, public policy, *et cetera*. The

enforceability of judgment is neutral in its weight. Any judgment obtained in New Jersey or Pennsylvania would be equally enforceable in Michigan. Practical considerations weigh slightly against a transfer. If the case were transferred to New Jersey, both parties would be forced to litigate outside their home forum. All key witnesses would be required to travel. In contrast, if transfer were denied and the case were litigated in this District, only Metalworking would be required to litigate outside its home forum - something it would have to do in any event. Further, one of its key witnesses (Rick Smith) is located within this District and would not have to travel for litigation if transfer were denied. I also find that this District has more of an interest in deciding this controversy than does the District Court in New Jersey. Though the DuPont facility is located in New Jersey, the present dispute involves a dispute about what parties intended when they negotiated their contract. One of the parties is located in this District and one is located in Michigan / Indiana. Consequently, this District has more of an interest in deciding this controversy than does New Jersey. Neither party submits any data on relative court congestion, so I find that factor to be neutral in its weight. Finally, I find that this Court would be more familiar with the application of Pennsylvania law than would the New Jersey court, so this factor weighs against a transfer.

      On the whole, I find that the balance of private and public factors weighs against a transfer of this case. AES's choice of forum, the location of the operative events, the convenience of the parties, the location of the relevant

books and records and the practical considerations that would make this trial easy, expeditious and inexpensive favor retaining jurisdiction over this matter. Consequently, the Motion to Transfer is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| American Environmental Services, Inc. ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Metalworking Lubricants Company, ) <br> ) <br> Defendant. ) | Civil Action No. 8-1479 |

AMBROSE, Chief District Judge

AND NOW, this 12th day of June, 2009, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motion to Dismiss (Docket No. [10]) is DENIED and the Motion to Transfer (Docket No. [14]) is DENIED.

BY THE COURT:

/s/Donetta W. Ambrose
  Donetta W. Ambrose,
  Chief U.S. District Judge